## Case No. 65.

### ADAMS v. The SOPHIA.

[Gilp. 77.][1]

District Court, E. D. Pennsylvania. April 25, 1829.

#### SEAMEN—WAGES—LOSS OF VESSEL.

1. When the cargo and freight of a vessel are lost, before the termination of a voyage, the wages of the seamen are also lost, and the original contract therefor is annulled.

[Cited in Davis v. Leslie, Case No. 3,639; The Dawn, Id. 3,666. Questioned in The Massasoit, Id. 9,260.]

[See, also, Giles v. The Cynthia, Case No. 5,424; McQuirk v. The Penelope, Id. 8,925; The Saratoga, Id. 12,355; Henop v. Tucker, Id. 6,368.]

[See note at end of case.]

2. When a portion of a vessel or her cargo is saved by the meritorious and extraordinary exertions of the seamen, a new lien arises thereon for their wages, although the freight is lost, and the original contract annulled.

[Cited in The Dawn, Case No. 3,666, and in The Niphon's Crew, Id. 10,277.]

[In admiralty. Libel by Samuel Adams, Asa Combs, Kennedy Andrews, James Howard, Edward Gillespier, John Antonio, and William Martin against the brig Sophia, Charles A. Kalberg, master, for wages. Decree for Samuel Adams, but dismissing the libel of the other libelants.]

J. R. Ingersoll, for libellants.
D. P. Brown, for respondent.

HOPKINSON, District Judge. Two libels are filed in this case: one on behalf of Samuel Adams, the mate of the brig; and the other on behalf of Asa Combs and others, seamen; both claiming wages for the libellants as mariners on board of the brig, on her late voyage from St. Thomas to Rum Key, and from thence to Philadelphia. This vessel sailed from St. Thomas on the 19th November last, arrived safely at Rum Key, and, after some detention there, proceeded on her voyage to Philadelphia; but on the 4th of February was wrecked near the capes of Delaware. The vessel and cargo were lost; but some of the rigging and spars were saved, and brought within this district, and have been libelled and attached to answer the claims of the libellants. The seamen have set forth their claims in their libel; and the mate has preferred his separately. They present different questions for the consideration and decision of the court, and will be separately examined. I shall first take up that of the seamen. It is objected to these libellants, in limine, that their libel presents no case for them; that, taking the facts, they state to be true, they do not show a right of recovery; or rather that it is apparent, on their own statement, that they are not entitled to the prayer of their petition; that is, to their wages on the voyage described. The proceedings of a court of admiralty are

[1][Reported by Henry D. Gilpin, Esq.]

not rigidly bound in the trammels of form; but, in every court, there must be some rules adhered to in the administration of the law, without which it would be a chaos of uncertainty and confusion. One of the most obvious and indispensable of these is, that the plaintiff shall exhibit such a case to the court, as entitles him, if true, to the judgment of the court. This can hardly be called matter of form; it is rather the substance on which the subsequent proceedings are to rest. How can a defendant answer a plaintiff who alleges nothing which charges him with any liability? Why shall he admit, or deny, or disprove a narration of facts, which when admitted or proved gives no cause of action against him; and which therefore need not be denied? Whatever case a libellant may have on his evidence, or in the truth of the transaction, he must also present a good one in his libel of complaint, and in his petition for redress, otherwise, should the relief asked be granted, the record of the court will not justify its decree; a plaintiff will obtain a judgment showing no right to it; and a defendant fall under the condemnation of the law, who has done no wrong. If such proceedings are taken, for revision, to a higher tribunal, which would have only the record for its guide and knowledge of the case, and could know nothing of the evidence, what could be done, but to reverse a decree to which the party shows he has no title?

These principles cannot be questioned; they are supported by common sense, as well as by the authority of legal adjudications. We must test by them the libel of Asa Combs and others, with a disposition to support it, if it can be done without injury to more important matters.

The libel sets forth, that the libellants, on the 20th November, 1828, at the port of St. Thomas, shipped on board the brig Sophia, as mariners, to perform a voyage from the said port of St. Thomas to Rum Key, and thence to Philadelphia; and thence back to St. Thomas, for certain wages. They further state, that they proceeded on said voyage, and continued doing their duty faithfully on board of said brig, until she was lost, without any fault of the petitioners, near cape Henlopen in the state of Delaware. They then state the amount of wages claimed, and pray that they may obtain relief in the premises, and such decree against the proceeds of the tackle, apparel and furniture, and other avails of the said brig within in the jurisdiction of this court, as the court shall deem requisite.

In this libel we have an averment that the voyage, for which the wages are claimed, began at St. Thomas; that it was thence to proceed to Rum Key; thence to Philadelphia, and back to St. Thomas; and that before the arrival of the brig at Philadelphia, she, together with her cargo and freight, was lost. On such a case, what is the sentence of the law? Clearly and undeniably that the wages of the seamen are lost with the freight, which is said to be the mother of those wages. This is the general, undisputed rule of the law. There is, however, an exception to this rule, founded on an obvious and just commercial policy. It is this; that when any part of the vessel or cargo is saved by the meritorious exertions of the crew, in the hour of distress and peril, they shall receive their wages out of the property thus preserved. On this principle a new claim for wages is given by the law, although that which was founded on the original contract between the ship owners and the mariners, is annulled and lost by the loss of the freight. The claim therefore presented to the court, in such a case, must lay its foundation on the facts which give it birth and existence, and by which only it can be sustained; and not on a contract which is utterly defunct and extinguished. The mariner cannot come here and say; I demand the payment of my wages by virtue of my shipping contract, and, at the same time, set forth a fact or state of things, which has destroyed and avoided that contract and every right and claim under it. He should raise and assert his new claim on the allegation of the facts, by which it is created and supported; to wit, that notwithstanding the freight of the vessel has been lost, yet that, by his exertions and services a part of the property has been saved, for which and from which he asks his reward. It should be observed, that to entitle the seaman to a resuscitation of his lost wages, two circumstances must concur, to wit, the saving of the property, which is the fund to which he is to look for payment; and that its preservation was owing to his services and exertions. The libel before us makes no allegation of either of these circumstances, but places the claim of the libellants on their original shipping contract, and their having faithfully performed their duty "until the brig was lost." But the duty and service, for which only they can maintain their claim, should have been performed after that unfortunate event, in rescuing the rigging and spars from the wreck. So as to the saving of this property; it is not directly alleged that any thing was saved, but it is merely incidentally alluded to in the prayer of the petition, by which the payment of wages is asked for, from the proceeds of the tackle, apparel and furniture of the brig. This is not such an averment or allegation as the defendant could have denied or taken issue upon. If, however, this were to be taken as a sufficient allegation of the preservation of a part of the property, where is it said or intimated that it was preserved by the meritorious exertions and services of the libellants? To say that they faithfully performed their duty until the vessel was lost, is far from presenting the ground, either directly or by necessary inference, on which alone this claim can be supported.

I wish to have it understood, that, in this

case, the libel expressly states the loss of the vessel on her voyage; and then does not go on to aver or set out the facts, by virtue of which wages become due, and may be re-covered notwithstanding such loss. The case would have had a different shape, if the libel had preferred a general demand of wages, earned on that voyage, in the usual form, omitting every thing of the accident to the brig. In such a case the defendant would have opposed the demand, by answering that the vessel, cargo, and freight were lost be-fore the termination of the voyage by ship-wreck. This course of pleading would have brought the whole matter into the view of the court on the allegations and testimony of the parties. I mention this because I do not deem it to be indispensable, that in case of wreck, the libellants should set out the salvage and their services; although it is the usual and certainly the best manner of bring-ing up the case; but that where a seaman does state the wreck of the vessel in his libel, he must go on to set out such circumstances, as will, notwithstanding this loss, entitle him to his wages. In other words he must not show a case, on which he is not entitled to the relief he prays for; he must not demand his wages on his original contract while he shows that such contract is destroyed, and can give him no right of recovery.

It is my opinion that these libellants can-not have the judgment of this court on the case they have presented; and this libel must be dismissed. I regret to send a party out of court on anything but the clear merits of the case; and I have not been wanting in my endeavors to avoid it here. Whether, on the settlement of the accounts of these men, anything would be due to them, it is unnecessary now to inquire; so also as to the charges made against them for neglect and misconduct.

I proceed to the case of Samuel Adams, the mate of the brig Sophia, in this disas-trous voyage. His libel sets out the con-tract for wages, for the voyage; and al-leges, generally, the faithful performance of his duty. He proceeds: "And your libellant further showeth that the said brig, on her passage to the said port of Philadelphia, was cast away in the night time near cape Hen-lopen, in the state of Delaware, and that without any fault or negligence whatsoever of your libellant; and your libellant further showeth, that nearly every thing belonging to the vessel was saved and preserved, and her tackle, apparel and furniture brought within the jurisdiction of this honourable court through the exertions of your libel-lant." Here then is exhibited to the court a full and complete legal right to wages, if the allegations of the libellant are supported by the testimony. How has it happened that,

in these libels, filed by the same counsel, on the same facts, there has occurred the difference, that exists between this for the mate, and that presented for the crew of the brig? It is the more unaccountable. too, as the libel for the mate was amended by some suggestions from the court, to prevent diffi-culties and exceptions to its form; and was filed with the clerk, two or three weeks be-fore that of the men. Why the same form was not pursued; why so essential a depar-ture from it was made, it is impossible for me to say.

To defeat the claim of the mate, some at-tempts have been made to show great neg-ligence of duty in the course of the voyage; and, what is more important, that the very disaster by which all was lost, was owing to his culpable inattention in not casting the lead, when it was his watch on deck, and they were known to be on the coast. The mate assuredly does not stand before the court as a very vigilant or meritorious offi-cer. He has no strong claims to considera-tion and reward out of the savings of this wreck. He has exhibited no extraordinary exertions or skill in the work of preservation, to reward which the law revokes its doom upon his contract for wages But, on the other hand, the situation of the property did not call for extraordinary skill and dar-ing; and he does not seem to have been wanting in any thing that was required of him by the captain, or by the emergency. The charges against him of gross neglect, antecedent to the loss of the brig, are not sufficiently sustained by the proof. I shall therefore decree that Samuel Adams be paid, out of the property attached by the process of this court, or its proceeds, the wages due to him at the time of the wreck.

Decree. That Samuel Adams, mate, recov-er his wages out of the property saved. or its proceeds from the 19th November, 1828, to the 4th February, 1829, the time of the loss of the vessel, deducting sixteen dollars and seventy-five cents paid to him; and that the libel of Asa Combs and the other libel-lants be dismissed.

[NOTE. Act June 7, 1872, (now Rev. St. § 4525,) provides that a seaman's right to wages shall not be dependent upon the earning of freight by the vessel, except that, in case of wreck or loss, proof that the seaman has not ex-erted himself to the utmost to save the vessel, cargo, or stores shall bar his claim.

[In The Massasoit, Case No. 9,260. Sprague, J., held that, in case of shipwreck, the seamen are entitled to wages if by their exertions rem-nants of the vessel to the amount of such wages are saved, although no freight is earned; also where the owner appears with another force for the salvage of the vessel, and does not desire the assistance of the seamen, al-though they are willing to render it. They may in such a case recover their wages in a suit in rem against the vessel.]